**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OKI AMERICA, INC., et al.,

    Plaintiffs,

    v.

ADVANCED MICRO DEVICES, INC.,

    Defendant.
_____/

AND RELATED COUNTERCLAIMS
_____/

No. C 04-03171 CRB

**ORDER**

    Oral argument on the parties' motions regarding invalidity and noninfringement, currently scheduled at 10:00 a.m., will be rescheduled for hearing at 2:15 p.m. on September 8, 2006. At oral argument, the parties should focus their discussion on the issues raised by the following questions.

AMD's Motion for Partial Summary Judgment of Invalidity

1.    Is there any intrinsic evidence for the Kurachi patents (U.S. Patent Nos. 5,739,571 and

5,856,694) that indicates that:

   a. impurity diffusion layers of protection MOSFETs that are part of a protection circuit that functions to protect an output buffer circuit need not be separated from, and need not have a field oxide film interposed between, impurity diffusion layers of buffer MOSFETs that are part of said output buffer circuit?

   b. impurity diffusion layers of protection MOSFETs that are part of a protection circuit that functions to protect an output buffer circuit must be separated from, and must have a field oxide film interposed between, impurity diffusion layers of buffer MOSFETs that are part of said output buffer circuit?

2. Assuming that the claims require that all the impurity diffusion layers of buffer MOSFETs that are part of an output buffer circuit must be separated from all the impurity diffusion layers of protection MOSFETs that are part of a protection circuit for protecting said output buffer circuit by an interposed field oxide film, do the claims read on the ICE Report?

3. Were all the SCA reports prepared subsequent to (i) a request for the analysis of a particular chip and (ii) delivery of the results to the requester?  Alternatively, was SCA 9007-010 (the report at issue that describes the Toshiba TC140G27HS Gate Array, the "ICE Report") prepared subsequent to (i) a request for the analysis of the Toshiba Gate Array and (ii) delivery of the results to the requester?  What evidence in the record supports the answers to the above?

4. If a document is prepared and given to another person, group or entity, and, assuming further distribution of the document itself is restricted but the contents of the document may be shared, is that document a "printed publication" under 35 U.S.C. § 102(b)?  What evidence in the record supports or refutes the notion that the contents of the ICE Report could be shared by any recipient of the report?

Oki's Motion for Partial Summary Judgment of Noninfringement

5. Regarding the Allen patent (U.S. 4,518,678), what is the product of the patented process of claim 5, and what evidence in the record supports the answer?

    a. If the product of the process is "a clean wafer edge," Oki's Reply Brief at 1, what is the rationale for patenting a process to make a product that is only to be immediately discarded?

    b. What weight, if any, should the Court give to the example in the Senate Report (<u>see</u> S. Rep. No. 100-83, 100th Cong. 1st Sess. (1987)) addressing semiconductor processing?

    c. If the product of the process is "contaminant free chips on the substrate," AMD's Opposition Brief at 8, does any subsequent processing materially change the product?

Each side will be permitted one hour for argument.

**IT IS SO ORDERED.**

Dated: September 6, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2004\3171\orderresjquestions.wpd       3